NETHERLANDS-AMERICAN STEAM NAV. CO. v. DIAMOND.

(Circuit Court of Appeals, Second Circuit. March 2, 1904.)

No. 91.

1. SHIPPING—SERVANTS—INJURIES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE —EVIDENCE—QUESTION FOR JURY.

In an action against the owner of a vessel for injuries to a servant of an elevator company, caused by his falling into the hold, as the result of the insufficiency of light, after the vessel's hatches had been closed, evidence *held* to authorize the submission of the question of defendant's negligence and plaintiff's contributory negligence to the jury.

2. SAME—ASSIGNMENTS OF ERROR—EXCEPTIONS—NECESSITY.

An assignment of error not supported by an exception cannot be reviewed.

3. SAME—INSTRUCTIONS—ASSUMPTION OF FACTS.

Where plaintiff was directed to go into the hold of a vessel, in order to trim grain, which had been loaded therein, and the vessel's servants, with knowledge that plaintiff had gone into the hold, and needed the light which came from the open hatches, and after being requested not to close the same, did so, without answering such request, and plaintiff was thereafter precipitated into the hold, by stepping on a misplaced bin cover, while groping his way in the dark with his shovel in front of him, requested instructions which ignored such evidence, tending to show that defendant had negligently placed plaintiff in a position of peril, and which assumed that what plaintiff did constituted contributory negligence as a matter of law, were properly refused.

4. SAME—PARTICULAR ACTS.

Where, in an action for injuries to a servant of an elevator company by falling into the hold of a vessel, the court sufficiently stated the rule to be applied by the jury in determining whether or not plaintiff had been guilty of contributory negligence, the court was not bound to give requested instructions directing the jury's attention to plaintiff's particular acts bearing on such question.

5. SAME—MODIFICATIONS.

Where a servant of an elevator company was injured by falling into the hold of a vessel, alleged to have resulted from the negligent shutting off of the light from the hatches by the seamen, a requested instruction that defendant was entitled to close its hatches in the rain, and was not at fault for having no light in the tank or on the orlop deck, and was not bound to furnish electric light for the elevator company's men, was properly modified by adding that such right to shut off the light was to be considered with reference to defendant's relation to plaintiff while using the hatch light as bearing on the question of defendant's negligence.

6. SAME—FELLOW SERVANT.

Where the superintendent of an elevator, who had charge of the loading of a vessel, testified that he had no control over the vessel's men, and denied that he gave any directions or requested the hatches to be closed, and only a single witness testified that the superintendent wanted to cover up the hatches on account of the rain, and that witness ordered it to be done, but did not testify that the superintendent ordered the hatch covered so as to exclude the light, which could have been prevented, it was not error for the court, in an action for injuries to a servant of the elevator company caused by the shutting off of the light by the closing of the hatches, to refuse to charge that, if the jury believed that the seamen

¶6. Who are fellow servants, see note to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Canadian Pac. Ry. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

covered the hatch by direction of the elevator superintendent, plaintiff could not recover on the ground that, if the act in so doing was negligent, it was the negligence of plaintiff's fellow servant.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here on writ of error from a judgment in favor of plaintiff for $3,000 damages, rendered on a verdict of a jury in an action tried in the United States Circuit Court for the Eastern District of New York.

Henry G. Ward, for plaintiff in error.
James C. Cropseyn, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Prior to the accident in question the plaintiff in the court below, a servant of the International Elevator Company, had been engaged on a canal boat shoveling grain, which was to be transferred to defendant's steamship. He was directed to go into the port bin of the ship's hold in order to trim the grain. There were two of these bins, a starboard and a port bin, located under the orlop deck. The upper, between, and orlop decks were reached by a series of ladders located at the starboard forward corner of the hatchway known as No. 3. Ladders also led down from the orlop deck into each of said bins through the openings therein. The size of these openings was about 7 by 9 feet.

When plaintiff approached hatchway No. 3 to descend into the hold it was raining slightly, and defendant's servants had begun to put on the covers of the hatchway, but four sections of said hatch covers, at the forward end where the ladder was located, had not been put on. When the hatches were off there was light enough to enable the men to pass up and down the ladders in the course of their work. On the deck alongside said hatchway were lanterns for the use of the men when necessary.

The light was sufficient for plaintiff's requirements when he started down the ladder, followed by one McGoldrick. He noticed, however, that defendant's servants were putting on the hatches, and he heard McGoldrick ask them whether they wanted to kill the men. When he reached the orlop deck there was barely light enough to enable him to see his way across to the wing on the port side, where, in accordance with a prevailing custom, he was to leave his shirt. As he was pulling it over his head the last of the light had disappeared. He started to find one of the ladders, feeling his way by pushing his shovel in front of him. While so doing he stepped on the bin cover, which was projecting over the edge of the bin opening, the cover tipped down, and he fell into the hold, sustaining serious injuries.

The exceptions challenge the propriety of the refusal of the court to direct a verdict for defendant, on the ground that the evidence failed to show negligence on the part of the defendant, and conclusively established contributory negligence on the part of the plaintiff.

The sole negligence complained of consisted in the act of closing the hatchway while plaintiff was descending the ladder. The evidence was uncontradicted that repeated requests were made to the ship's men not to put on the hatch covers at that time, as the light was needed below. On this point the court charged the jury, inter alia, as follows:

"The ship was under no obligations whatever primarily to furnish a light to the elevator's men, and under no primary obligations to furnish a light to this plaintiff, but the plaintiff's own master was bound to furnish him with artificial light. The plaintiff had a right, however, to use the light passing through the hatch while it was shining there. And while the ship had a perfect right to cover up the hatch when the rain came on, it had no right to close up the hatch provided the persons in charge knew, or had reason to know, that the plaintiff was relying upon the light to make his way down into the ship. * * *

"If the ship wanted to close up the hatch, it was the duty of its servants to use reasonable care to do it in such a way that the plaintiff would not be injured, provided the plaintiff in good faith was relying upon that light to go down. * * *

"Of course, if, when Diamond came to this place, these men said to him, 'This light is going to be shut off, we are going to close this right up,' and they said this by word or action, so that he had full and fair and reasonable notice of it, and he went down, then he took his own chances. But if he went down using the hatch as other men were entitled to use it when it was not covered, and the men were asked to leave off some of the covers, and if he had a right to believe that they would leave them off until' he had a fair chance, a reasonable chance, to get into the lower hold, then, if they didn't use due care, ordinary care, in withholding the hatches until he had a fair chance to get down into the hold, the defendant is guilty of negligence, and it is for you to say whether the plaintiff did or did not have this notice. If he did not have it, it is for you to say whether the defendant did exercise the proper care to give him a fair chance in the amount of light delivered and for a sufficient time to allow him to get down there. * * *

"You will take into consideration, in determining the question of the defendant's negligence in closing up the hatch, what a man of ordinary prudence would expect the plaintiff would be confronted with as he went down. For instance, it is alleged here that this cover was off the hatch on the orlop deck. It was not negligence to lift that cover off the hatch. It is alleged that the cover projected over the hatch. It was not negligence on the part of the defendant to allow the cover to project over the hatch. But, if it was projecting over the hatch, then you are to consider, as bearing on the question of the defendant's negligence, whether a man of ordinary prudence, stationed there and having this plaintiff in charge, would not have thought, 'If I close up this light the plaintiff must go down so many ladders, he must make such arrangements as he is entitled to to go down into the lower hold, and there is the hatch cover resting over the hatch opening, and he may tumble over that, be precipitated over that, and carried down into the lower hold.' That question of the hatch cover is merely an incident here; it is not the main question to be decided, but it is an incident which a man of ordinary prudence would take into consideration in determining the danger of closing up the hatches before the plaintiff could reach his destination."

These excerpts from the charge show the theory on which the court rightly submitted the single question involved as to defendant's negligence to the jury. The argument of defendant's counsel is that plaintiff knew, or had reason to know, that the hatches were to be put on immediately, because the men continued to put them on after plaintiff started to descend; that plaintiff, therefore, assumed the risk; and that what he afterward did, and not the closing of the hatchway, was the proximate cause of the injury. But the uncon-

tradicted evidence of plaintiff and of his companion, McGoldrick, is to the effect that when they asked the men not to cover up the hatches until they got down the men made no reply. The plaintiff had, at least, quite as much right to assume that defendant's servants would leave off hatches sufficient to furnish him light as to suppose that they would put him in a position of peril by shutting off all light, especially when no necessity was shown for their doing so. In these circumstances, the court in its charge having fully discussed the relevant evidence, accurately stated the respective rights and obligations of the parties, and properly left to the jury the question whether the defendant acted with a reasonable regard to said rights and obligations.

Defendant's exception to the refusal of the court to direct a verdict in its favor on the ground of plaintiff's contributory negligence is based on two grounds. Defendant's counsel argues that even if it be assumed that plaintiff, being confronted with a sudden emergency, acted properly in attempting to grope his way to the bin opening, the position was one of his own choosing, because he had elected, after timely warning from the impending hatch cover, not to go back and get a light, or that, if he was not in a position of emergency, he was grossly negligent in not guiding himself back to the ladder by the bulkhead, along which he had just come, or in not waiting for McGoldrick to come down.

The first contention was properly left to the jury, under appropriate instructions, as appears by the portion of the charge quoted above and by other portions not quoted. The other contention overlooks the fact that the jury must have reached the conclusion that plaintiff was placed in a perilous position through the negligence of defendant, or otherwise they would have rendered a verdict in favor of defendant. Defendant's negligence having been thus affirmatively found in this regard, the rule of law must be applied that one who, by his negligence, places another in a position of peril, cannot relieve himself from liability by showing that the other committed an error of judgment.

It is by no means clear that plaintiff was guilty of negligence in proceeding slowly, pushing his shovel in front of him, along the deck toward the bin where he had been ordered to go. There would have been no danger in this course if the cover had not projected over the opening in the bin, a condition which the plaintiff could not be presumed to anticipate.

In any event, questions of proximate cause and reasonable care, especially in cases involving the claim of contributory negligence, are peculiarly for the jury, to be determined under proper instructions from the court, according to the circumstances of the particular case. Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 558, 11 Sup. Ct. 653, 35 L. Ed. 270; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Baltimore & Ohio Railroad Co. v. Griffith, 159 U. S. 603, 611, 16 Sup. Ct. 105, 40 L. Ed. 274.

The twelfth assignment of error is directed to a portion of the charge quoted above, and furnishes no ground of exception when read in connection with the rest of the charge.

There is no exception to support the thirteenth assignment of error.

Error is further assigned to the refusal of the court to charge, as requested by defendant, as follows:

"First. If the jury believe the plaintiff could have obtained a lantern if he had asked for it, and yet moved about on the orlop deck in the dark, he cannot recover in this case because there was no light or insufficient light there.

"Second. If the plaintiff knew the general disposition of the orlop deck when he fell, he assumed the risk of moving about on it in the dark.

"Third. If the plaintiff did not know the general disposition of the orlop deck when he fell, then it was contributory negligence on his part to move about on it in the dark.

"Seventh. If the plaintiff, with knowledge that the upper hatch was covered and that there was no light, or insufficient light, on the orlop deck, undertook to find and descend into the deep tank, he cannot complain of this condition of things."

These requests ignore the evidence tending to show that defendant had negligently placed plaintiff in a position of peril, and assume that what plaintiff did in the dark necessarily constituted such contributory negligence as would preclude recovery. The plaintiff's testimony as to what occurred is as follows:

"I looked around, and I didn't know what to do, I didn't know how long I would be there. I got my shovel out in front of me, and started over for the ladder, either to go up and get a light or to go down in the hold. I started on, feeling my way the best way I could, and in as safe way as I could, and I went in the hold. * * * I was walking slowly with my shovel in front of me, going on trying to find my way as best I could, until I got struck and fell right into the hold."

Even if the jury had found that defendant was not negligent, it was for them to determine whether a man of ordinary prudence, not knowing or having reason to assume that a cover was sticking out over the opening in the bin, would have acted as plaintiff did, in view of all the circumstances. In any event, as the charge of the court on this point sufficiently stated the rule to be applied, the court was not bound, by directing the attention of the jury to particular acts, to divert their minds from the view of the whole situation in the light of all the surrounding circumstances. Erie Railroad Company v. Winter, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; Pennsylvania Railroad Co. v. Palmer (C. C. A.) 127 Fed. 956.

At the close of the general charge the court further charged the defendant's fourth, sixth, and ninth requests, to the effect that defendant had the right to close its hatches in the rain, and was not at fault for having no light in the tank or on the orlop deck, and was not bound to furnish electric light for the elevatormen, but added that said rights to shut off the light were to be considered with reference to its relation to the plaintiff, while using the hatchway light, as bearing upon the question of defendant's negligence, under the rules previously stated in its charge. The defendant excepted to said modification. That said modification was properly made appears

from the foregoing discussion. The exceptions to said modification must therefore be overruled.

Exception was also taken to the refusal of the court to charge defendant's eighth request, which was as follows: "If the jury believe that the defendant's servants covered the hatch by the direction or at the request of the superintendent of the elevator, then the plaintiff cannot complain of its doing so, even if it were negligent, because it would be the negligence of a fellow servant." The superintendent stated that he had no control over the ship's men, and denied that he gave any such direction or request. The single witness who testified as to any such directions stated that the superintendent wanted to cover up the hatch on account of the grain, and that he, the stevedore, ordered it to be done. But he does not state that the superintendent ordered the hatch so covered as to exclude the light—there was another way of covering the hatches with a tarpaulin, which was often employed, and which permitted the light to shine through— and it does not appear that the defendant's servants, in thus shutting out the light while plaintiff was descending, acted under his supervision or directions. The exception is overruled.

The judgment is affirmed.