[Civ. No. 4207. First Appellate District, Division One.—July 5, 1922.]

MARGARET A. GAINER (a Widow), Respondent, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] NEGLIGENCE — INJURY TO STREET-CAR PASSENGER — DOCTRINE OF LAST CLEAR CHANCE—ERRONEOUS INSTRUCTION—EVIDENCE.—An instruction on the doctrine of the last clear chance in an action for personal injuries received by a street-car passenger while in the act of alighting therefrom was prejudicially erroneous where the passenger, after requesting the motorman to stop the car as it neared her stopping place, approached the steps at the front exit before the car had stopped and was warned by the motorman not to alight until the car had stopped, and there was no evidence showing that the motorman knew or that he could have had reason to believe from the mere fact of plaintiff's position that she intended to step from the car before it reached a standstill.

[2] ID.—DOCTRINE OF LAST CLEAR CHANCE.—In order to make the defendant liable, notwithstanding contributory negligence of the plaintiff, the defendant must not only be aware of the danger in time to avert it, but must also know, or have reason to believe, that the plaintiff is oblivious of the danger and is in a position where he cannot extricate himself from it, and that under such circumstances the defendant fails to exercise ordinary care and prudence to avoid the injury to plaintiff.

---

2. Doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and of defendant was concurrent, notes, Ann. Cas. 1912B, 888; 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379.

[3] ID.—DUTY OF CAR OPERATIVES—INSTRUCTION.—An instruction that it was the duty of the motorman and conductor to make sure by looking to see that plaintiff had alighted from the steps of the car before they started, and if it was found that either or both of them neglected to perform such duty, and as a consequence plaintiff was injured, the verdict should be for plaintiff, was not erroneous, as assuming that the car had come to a stop and was again started.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Kingsley Cannon, Cyril Appel and Ivores R. Dains for Appellant.

John H. Crabbe for Respondent.

KNIGHT, J., *pro tem.*—This is an appeal by defendant, United Railroads of San Francisco, a corporation, from a judgment rendered in favor of plaintiff, Margaret A. Gainer, whereby plaintiff was awarded the sum of $5,000 damages for personal injuries received by her while alighting from a street-car operated by the defendant company.

Insufficiency of the evidence and erroneous instructions are the grounds upon which the appeal is taken.

The accident occurred about 8 o'clock in the evening of February 6, 1917, at the corner of Mission and Oliver Streets. The car on which the accident occurred was one of the so-called suburban type, the front and rear entrances (or exits, as the case may be) on the right side being allowed to remain open so that passengers might enter or leave the car at will without operating gates. On the left side, however, the gates were closed. Plaintiff, who, at the time of the accident, was sixty-five years of age, had been riding in the inclosed part of the car, and, as it neared her stopping place, she went to the front platform and requested the motorman to stop the car at Oliver Street. The motorman proceeded to check the speed of the car, and, as he was bringing it to a gradual stop, plaintiff approached the steps at the front right exit. What actually occurred thereafter is in dispute.

Plaintiff claims that, after the car came to a complete standstill, she stepped down upon the steps of the car, and was about to step to the ground when the car started with a jerk and threw her to the ground, severely injuring her; that the car moved three or four feet and then stopped again. She was then given assistance.

Defendant claims that plaintiff attempted to alight from the car while the same was in motion and was thereby thrown to the ground and injured. The main issue before the jury seemed to be whether or not the car was moving at the time plaintiff attempted to alight therefrom.

[1] In that state of the record the trial court gave to the jury certain instructions submitting an issue on the doctrine of the last clear chance. They were as follows: ''I instruct you that, if you find that the defendant's motorman saw the plaintiff in a position where she was in danger of falling off the car, and if you further find that the motorman realized such danger, and, by exercising ordinary care under the then existing circumstances, could have avoided injuring the plaintiff, but failed to do so, then your verdict must be for the plaintiff, Margaret A. Gainer,'' and ''I instruct you that one having knowledge of the dangerous situation of another, and having a clear opportunity, by the exercise of proper care, to avoid injuring another, must do so, notwithstanding the latter has placed himself in such situation of danger by his own negligence. If, therefore, you should find from the evidence that the defendant's motorman saw the situation in which plaintiff was before the accident and appreciated the danger she was in, and had the opportunity, by the exercise of proper care, to avoid injuring the plaintiff, and failed to exercise such care, or failed to do what reasonable prudence would dictate he should have done to avoid injuring the plaintiff, the defendant is liable, and your verdict must be for the plaintiff, Margaret A. Gainer.''

Appellant contends that the evidence was and is an insufficient predicate for the application of the doctrine of the last clear chance.

The testimony concerning which that doctrine may be invoked, if at all, was that given by the motorman, Nelson. He testified, while testifying on direct examination as a witness for defendant, that, as the car approached Oliver

Street, plaintiff came out of the inclosed part of the car, turned to her right and walked over toward the steps; that she put one foot on the first step, and he looked over his shoulder and said, "Wait until the car stops, Lady"; that this warning was given when the car was one hundred feet from Oliver Street.

On cross-examination the witness testified as follows: "Q. You could have reached out and grabbed Mrs. Gainer and shut off your power with the other hand? A. No, I used my right hand for air and the left hand for the controller. Q. Supposing you let the air go . . . and reached for Mrs. Gainer—you could have pulled her back? A. Yes, I could have pulled her back, but then, it would not have been safe. Q. Would not have been safe for who? A. Would not have been safe to check up the car. Q. It would have been safe to let her in that position? A. As long as she was holding on to the bars on each side it would have been safe. The car was running smooth. Q. For one hundred feet you were checking up? A. Yes. . . . Q. In other words, it had not impressed you that the lady was in a position of danger and she was not going to step off and you could give your attention to the car? A. Having warned her once I did not think she would walk off the car before the car stopped. Q. Why did you warn her at all?' A. I warned her when I saw her put one foot on the lower step—from the first. Q. You mean on the top step from the platform, the first step from the platform? A. Yes. Q. When she was down in that position could you have reached her readily with your right hand if you had seen fit to do so? A. Well, in the way I held my air I could not. Q. Suppose you had taken your hand off of the air control, could you not have done so? A. Yes, if I had taken my hand off the air control. Q. What would have been the result if you had taken your hand off of the air control? A. Well, I would have gone past Oliver Street, and I would not have a chance to stop my car."

In the recent case of *Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408], it was held that in cases of negligence it was prejudicial error to give an instruction upon the subject of the last clear chance, where there was not sufficient evidence to justify submitting such

an issue to the jury. In commenting upon that point the court said: ''This instruction may have governed the jury in arriving at a verdict for the plaintiff, and in the absence of evidence to support it, must be held fatally prejudicial. The jury may, under the evidence, have found the decedent guilty of contributory negligence. A verdict for plaintiff after a finding of such negligence could not be supported, excepting under the doctrine of the last clear chance.''

[2] That doctrine, briefly stated, is that in order to make the defendant liable, notwithstanding contributory negligence of the plaintiff, the defendant must not only be aware of the danger in time to avert it, but must also know or have reason to believe that the plaintiff is oblivious of the danger and is in a position where he cannot extricate himself from it, and that under such circumstances the defendant fails to exercise ordinary care and prudence to avoid the injury to plaintiff. (*Read* v. *Pacific Electric Ry. Co.,* 185 Cal. 520 [197 Pac. 791] ; *Wallis* v. *Southern Pac. Co., supra; Arnold* v. *San Francisco etc. Rys.,* 175 Cal. 1 [164 Pac. 798] ; *Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359] ; *Young* v. *Southern Pac. Co.,* 182 Cal. 369 [190 Pac. 36].)

It would therefore seem, in the instant case, that the judgment cannot be sustained unless the evidence established the fact that plaintiff placed herself in a position of danger, unknown to her, from which she could not extricate herself, and that the motorman, after perceiving her perilous position, failed to exercise ordinary care and prudence to avoid injury to her.

Of course, in order to give application to the doctrine of the last clear chance, it must be assumed that plaintiff attempted to alight from the car before it came to a standstill.

After an analysis of the evidence, we are of the opinion that the facts proved do not present a case involving the doctrine above mentioned.

The actual danger to plaintiff, as we take it, was not in approaching the steps of the car, nor in standing upon them while the car was moving, but in attempting to alight from the car before it had stopped. And there is no evidence to show, we think, that the motorman knew or that he could have had reason to believe, from the mere fact of plaintiff's position in standing on the steps, that she intended to step

from the car before it reached a standstill. In this respect it may be stated that it is not at all unusual for passengers riding on street-cars, operated without gates, to approach the exits and stand upon the steps, while the car is being slowed down, so that they may be ready to alight as soon as the car stops. The motorman testified that he admonished plaintiff to wait until the car stopped before she attempted to alight therefrom. If that testimony be believed, it would not be reasonable to hold, we think, that the motorman knew, or had reason to believe, that plaintiff would ignore such admonition and persist in stepping from the car before it had stopped, particularly in view of the fact that he further testified, in effect, that he thought such admonition would be heeded. If, on the contrary, his testimony shall not be accepted as truthful, and we assume that no such admonition was given, then, as above stated, it could hardly be said that he knew or could have reasonably believed, from the fact of plaintiff's position in standing upon the steps, that she would ignore the natural precautions which she would ordinarily take for her own safety, and step from the car while it was in motion.

Moreover, under the circumstances as here shown, we are not prepared to say that merely because a passenger approaches the exit of the car and stands upon the steps, while the car is approaching a stop, that it would be prudent for a motorman, after warning said passenger not to alight until the car had stopped, to leave his post, allow his car to run uncontrolled, in possible violation of the rights of other passengers and the public using the street in the pathway of the car, in order to prevent such passenger from stepping from the car before it had stopped.

For the reasons above stated we are constrained to hold that there is not sufficient evidence to show that the motorman did know, or have reason to believe, that plaintiff was in imminent danger of being injured. Consequently the doctrine of the last clear chance did not apply.

The case of *Bisinger* v. *Sacramento Lodge*, 187 Cal. 578 [203 Pac. 768], cited and relied upon by respondent, does not, we think, apply to the facts of this case. In that case, the application of the doctrine of the last clear chance was neither discussed nor decided. The case was decided upon the theory, as we understand it, that as a matter of law, the

only negligence which proximately caused the accident was that of the defendant, and that the act of the plaintiff, which appellant claimed constituted contributory negligence, was not the cause of the injury.

[3] The final contention of appellant is that the court, in giving instruction number XI to the jury, "erroneously assumed that the car in question had come to a stop and was again started." Said instruction was as follows: "I charge you that it was the duty of the defendant's motorman and conductor on the car to make sure by looking to see that plaintiff had alighted from the steps of the said car before they started the car, and if you find that either, or both, of them neglected to perform such duty, and that, as a consequence of such failure, the plaintiff was injured without fault on her part, then your verdict must be for the plaintiff, Margaret A. Gainer."

While this instruction may be open to some criticism, a review of the same in the light of the other instructions given would indicate that the language used did not presume to predetermine the issue in this case. The clear purport of the instruction, we think, was to make clear the duty of the conductor and motorman under all such situations and then said, "if you find that either, or both, of them neglected to perform such duty, and that, as a consequence" thereof, the injury resulted, the finding should be for plaintiff. Not only this interpretation safeguarded the rights of appellant, but, as above stated, other instructions given were sufficiently clear to correct any assumption of a predetermination of this issue. Several instructions were given to the effect that, if it should be the finding that the respondent stepped from the car while the same was in motion, the verdict should be for the defendant. While, as above stated, the instruction complained of may be open to some criticism, still, taking the instructions as a whole, we do not believe that defendant suffered substantial prejudice thereby.

Holding as we do that the giving of the instructions upon the doctrine of the last clear chance was prejudicial error, the judgment is reversed.

Kerrigan, J., and Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.